Nicole Owens
Executive Director
Mary E. Spears, IN Bar No. 27353-49
Jonah J. Horwitz, ID Bar No. 10494
Assistant Federal Defenders
Federal Defender Services of Idaho
Capital Habeas Unit
702 W. Idaho, Suite 900
Boise, Idaho 83702
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:  Mary_Spears@fd.org
           Jonah_Horwitz@fd.org

Attorneys for Petitioner

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **THOMAS EUGENE CREECH,**<br>    Petitioner,<br><br>v.<br><br>**RANDY VALLEY,**<br>Warden, Idaho Maximum Security Institution,<br>    Respondent. | Case No.  24-485<br><br>**CAPITAL CASE**<br><br>PETITION FOR WRIT OF HABEAS CORPUS<br><br>**EXECUTION SCHEDULED FOR NOVEMBER 13, 2024** |

1.      Pursuant to 28 U.S.C. § 2254,[1] Petitioner Thomas Eugene Creech seeks the writ of habeas corpus to relieve him from his unconstitutional death sentence because it would be cruel and unusual to attempt to execute him after the psychological and physical torture the State inflicted upon him at his botched execution.

I.   **Procedural Background**

2.      Mr. Creech is an indigent prisoner under sentence of death. He is currently confined at Idaho Maximum Security Institution ("IMSI") in Kuna, Idaho, as Prisoner Number 14984. Randy Valley is the Warden of IMSI and therefore has custody over Mr. Creech.

3.      Mr. Creech was charged with first-degree murder in Ada County District Court for the murder of David D. Jensen in case number 10252.[2]

4.      On August 28, 1981, Mr. Creech entered a guilty plea for the crime.

---

[1] Mr. Creech files this petition under § 2254 because he is "a state prisoner in custody pursuant to a state court judgment" and is not "in pre-trial detention or awaiting extradition" or in some comparable posture. *Dominguez v. Kernan*, 906 F.3d 1127, 1135 (9th Cir. 2018). He challenges not the method the State may employ to attempt to execute him here but the validity of the death sentence itself, meaning this case lies within "habeas's core." *Nance v. Ward*, 597 U.S. 159, 167-68 (2022). However, to the extent the Court disagrees and regards 42 U.S.C. § 1983 as the proper vehicle for Mr. Pizzuto's claim, it should re-characterize the petition accordingly and proceed with the case. *See Nettles v. Grounds*, 830 F.3d 922, 936 (9th Cir. 2016) (en banc).

[2] Ada County District Court case no. 10252 has been assigned the current case number of CR-FE-0000-10252.

Petition for Habeas Corpus – 2

5. Mr. Creech was originally sentenced to death on January 25, 1982, by Judge Robert Newhouse.

6. The Idaho Supreme Court affirmed the judgment and conviction on May 23, 1983. *See State v. Creech*, 670 P.2d 463 (Idaho 1983).

7. The issues raised in those proceedings are summarized in the Idaho Supreme Court's opinion.

8. Relief on a subsequent post-conviction petition was denied by the Idaho Supreme Court on June 20, 1985. *See State v. Creech*, 710 P.2d 502 (Idaho 1985).

9. The issues raised in those proceedings are summarized in the Idaho Supreme Court's opinion.

10. On March 27, 1991, the Ninth Circuit granted Mr. Creech habeas relief with respect to his death sentence. *See Creech v. Arave*, 947 F.2d 873 (9th Cir. 1991).

11. The issues raised in those proceedings are summarized in the Ninth Circuit's opinion.

12. The U.S. Supreme Court reversed the Ninth Circuit's judgment in part on March 30, 1993, on claims not relevant now, but left the grant of relief in place. *See Arave v. Creech*, 507 U.S. 463 (1993).

13. As a result of the federal rulings, a new penalty-phase proceeding was held, and a new death sentence was imposed by Judge Newhouse on April 17, 1995.

14. On August 19, 1998, the Idaho Supreme Court upheld the death

Petition for Habeas Corpus – 3

sentence and affirmed the denial of post-conviction relief. *See State v. Creech*, 966 P.2d 1 (Idaho 1998).

15. The issues raised in those proceedings are summarized in the Idaho Supreme Court's opinion.

16. The Idaho Supreme Court subsequently denied relief on several successive petitions for post-conviction relief and other collateral challenges to Mr. Creech's conviction and sentence. *See Creech v. State*, 543 P.3d 500 (Idaho), *cert. denied*, 144 S. Ct. 1026 (2024); *Creech v. State*, 543 P.3d 494 (Idaho 2024); *Creech v. State*, 51 P.3d 387 (Idaho 2002).

17. The issues raised in those proceedings are summarized in the Idaho Supreme Court opinions cited in the paragraph above.

18. After Mr. Creech's resentencing in 1995, he initiated a new federal habeas proceeding in U.S. District Court. The case was assigned number 1:99-cv-224.

19. Relief on the petition as a whole was later denied by the district court and then the Ninth Circuit in *Creech v. Richardson*, 59 F.4th 372 (9th Cir. 2023).

20. The issues raised in those proceedings are summarized in the Ninth Circuit opinion.

21. On October 10, 2023, the U.S. Supreme Court denied certiorari. *See Creech v. Richardson*, 144 S. Ct. 291 (2023).

22. Mr. Creech filed a subsequent habeas petition in U.S. District Court on October 16, 2023. The case was assigned number 1:23-cv-463.

23. Relief on that petition was later denied by the district court and then the Ninth Circuit in *Creech v. Richardson*, 94 F.4th 847 (9th Cir. 2024).

24. On October 7, 2024, the U.S. Supreme Court denied certiorari. *See Creech v. Richardson*, ___ S. Ct. ____, 2024 WL 4427383 (2024).

25. Meanwhile, the State obtained a warrant for Mr. Creech's execution on January 30, 2024.

26. The January 30, 2024, death warrant scheduled Mr. Creech's execution for February 28, 2024.

27. On that date, however, the State attempted but failed to execute Mr. Creech.

28. On March 18, 2024, Mr. Creech filed another post-conviction petition in Ada County District Court. It was assigned case number CV01-24-04845.

29. That petition alleged two claims for relief.

30. The First Claim was that it would be cruel and unusual to carry out Mr. Creech's death sentence in light of the February 28, 2024, botched execution.

31. The Second Claim was that it would violate double jeopardy principles to carry out Mr. Creech's death sentence after the botched execution.

32. The district court in Ada County granted the State's motion for summary dismissal of the petition on September 5, 2024.

33. A motion to reconsider that dismissal was timely filed on September 17, 2024.

34. That motion was denied on October 16, 2024.

Petition for Habeas Corpus – 5

35. On October 16, 2024, the State also obtained a new warrant for Mr. Creech's execution.

36. This October 2024 death warrant scheduled Idaho's second attempt to execute Mr. Creech for November 13, 2024.

## II. Grounds for Relief

37. Mr. Creech's grounds for relief are as follows.

38. Every statement in this petition is incorporated by reference into every part of it.

### A. Claim One: It would be cruel and unusual to carry out Mr. Creech's death sentence after the botched execution.

39. It would be cruel and unusual to carry out Mr. Creech's death sentence after the botched execution. *See* U.S. Const., Ams. VIII, XIV.

*Supporting Facts*:

40. The State of Idaho has obtained thirteen separate death warrants for Mr. Creech.

41. Those warrants were obtained on March 25, 1976; January 25, 1982; March 24, 1983; September 23, 1983; April 3, 1984; January 10, 1986; July 11, 1986; January 2, 1997; June 9, 1998; November 3, 1998; October 12, 2023; January 30, 2024; and October 16, 2024.

42. With the exception of the final three warrants, each was obtained by the State at a time when it was legally impossible for an execution to be carried out because Mr. Creech had pending what was effectively a first-round appeal or collateral challenge.

Petition for Habeas Corpus – 6

43. In other words, although the State of Idaho secured ten death warrants between 1976 and 1998, every single one of them was inevitably destined to be (and was) stayed.

44. Each of the thirteen warrants signed in Mr. Creech's case set a specific date for him to be executed.

45. Acting on the January 30, 2024, death warrant, the Idaho Department of Correction (IDOC) scheduled Mr. Creech's execution to begin at 10:00 AM on February 28, 2024.

46. IDOC intended to use a single-drug cocktail of pentobarbital to execute Mr. Creech.

47. Mr. Creech was aware in advance of the scheduled execution that IDOC intended to use a single-drug cocktail of pentobarbital.

48. After the death warrant was issued, Mr. Creech was moved to a cell at F-Block, the freestanding building at IMSI that houses the execution chamber.

49. While under warrant, Mr. Creech had to make a number of arrangements for his death.

50. For example, prison staff asked Mr. Creech repeatedly what his autopsy plans were.

51. Mr. Creech found it upsetting to be asked such questions, as he did not wish for anyone to cut into his body.

52. Additionally, Mr. Creech was asked to select witnesses for his execution.

Petition for Habeas Corpus – 7

53. Mr. Creech was likewise asked to select a spiritual advisor for his execution.

54. Along the same lines, Mr. Creech was asked how he wished to dispose of his property.

55. On February 7, 2024, the Warden escorted Mr. Creech to the execution chamber to give him a "tour."

56. There, the Warden showed Mr. Creech the spot where his wife of more than twenty-five years, LeAnn Creech, would be sitting and watching her husband be killed.

57. Envisioning his wife's face in the window looking into the death chamber made Mr. Creech feel suicidal.

58. The day before his execution, virtually all of Mr. Creech's property was removed from the prison and taken to the offices of his legal team.

59. On the day and night leading up to the scheduled execution, Mr. Creech was visited by members of his legal teams and by his wife.

60. During those visits, Mr. Creech had in-person goodbyes with thirteen different members of his legal teams, including attorneys, investigators, and paralegals.

61. On the morning of the execution, on February 28, 2024, Mr. Creech called his legal team at the Federal Defenders at 8:07 AM.

62. Mr. Creech's legal team advised him then that all of his requests for stays of execution had been denied.

Petition for Habeas Corpus – 8

63. For the next twenty-four minutes, Mr. Creech said goodbye to the members of his legal team on the phone.

64. Mr. Creech did not attempt to dehydrate himself prior to the execution.

65. To the contrary, Mr. Creech drank normally prior to the execution.

66. At approximately 10:00 AM on February 28, 2024, Mr. Creech was brought into the execution chamber on a gurney.

67. Mr. Creech was placed on the table in the execution chamber where inmates are put to death.

68. IDOC had assembled at least fourteen people in two witness rooms to watch Mr. Creech die.

69. The State's witnesses included Ada County Prosecuting Attorney Jan Bennetts and Idaho Attorney General Raúl Labrador, whose offices have been attempting to put Mr. Creech to death for more than forty years.

70. Also present for the State were Ada County Sheriff Matt Clifford, counsel for the Governor Jared Larsen, and Dodds Hayden from the Idaho Board of Correction.

71. Four members of the media were in the witness gallery to watch the execution.

72. Mr. Creech's execution witnesses were his wife LeAnn and her son, as well as Mr. Creech's spiritual advisor, and his counsel.

73. When Mr. Creech was placed on the table, he was sure he was going to die.

74. Straps were placed on Mr. Creech's arms and across his mid-section.

75. At the execution, Mr. Creech was able to make eye contact with his wife while on the table.

76. Mr. Creech saw in his wife's face a look of "total devastation."

77. During the execution, Mr. Creech reached his hand out to where his wife was sitting and she placed her own hand on the glass separating the two of them.

78. Mr. Creech loves his wife.

79. As he later explained in a signed declaration, he "can't bear to think of her going through this again."

80. The execution team used a blood pressure cuff to try to make Mr. Creech's veins accessible.

81. For the same purpose, the execution team applied a warm dressing and palpitated Mr. Creech's right arm and hand.

82. After taking the dressing off, the execution team used a device to search for a vein.

83. The execution team then made at least eight unsuccessful attempts to set an IV line.

84. For each attempt, the execution team cleaned Mr. Creech's arm with an alcohol wipe and applied a numbing agent.

85. With respect to each attempt, the execution team poked Mr. Creech with a needle at least once.

Petition for Habeas Corpus – 10

86. During the eight unsuccessful attempts, the execution team jabbed Mr. Creech with needles in both arms, both hands, and both legs.

87. While Mr. Creech was being pricked with the needles, he thought the lethal chemicals were being pumped into his body.

88. That is, Mr. Creech did not realize that the execution team had failed to set the IV line.

89. Mr. Creech believed he could taste the lethal chemicals being injected into his body.

90. The needles hurt Mr. Creech.

91. Mr. Creech's right elbow was especially pained by the needles.

92. Mr. Creech said "ouch" several times.

93. The pain also caused him to involuntarily jump or twitch on at least one occasion.

94. However, Mr. Creech tried to conceal his pain for LeAnn's benefit, since she was watching.

95. The Warden announced at approximately 10:58 that IDOC was calling off the execution.

96. Mr. Creech is now 74 years old.

97. On February 28, 2024, he was 73 years old.

98. One media witness described the February 28th execution attempt as akin to watching the State try to kill someone's grandfather.

99. After the failed execution, Mr. Creech has been struggling with the following symptoms.

100. First, Mr. Creech has been dealing with severe paranoia.

101. Mr. Creech has been worried that people at the prison will poison his food.

102. Similarly, Mr. Creech has been anxious that the State will send a fellow prisoner to attack him and "finish the job."

103. Second, Mr. Creech has been having extreme difficulty in sleeping.

104. He is afraid to fall asleep for fear he will wake up back on the execution table.

105. Mr. Creech also has had some kind of nightmare every night.

106. In many of Mr. Creech's nightmares, he is strapped down on the execution gurney.

107. Some of Mr. Creech's nightmares center around an image of his wife LeAnn's face and the way it looked during the execution.

108. Third, Mr. Creech has been suffering from delusions and/or hallucinations.

109. For instance, Mr. Creech will sometimes see people "oozing" through his cell door.

110. These "shadows" upset Mr. Creech, but he is unable to stop them from appearing.

111. Other times, Mr. Creech will see lights become brighter when no one else does.

112. Fourth, Mr. Creech's memory has been adversely affected.

113. For instance, Mr. Creech does not remember visits that occurred on the day of the execution.

114. He forgets things even after they are told to him multiple times on multiple occasions.

115. He also "remembers" objects in his surroundings at the prison which are not and never were real.

116. Fifth, Mr. Creech stopped eating as much after the execution.

117. The night of February 28th, immediately following the botched execution, he collapsed and hit his head.

118. Sixth, Mr. Creech has been more on-edge and irritable since the failed execution.

119. Certain sounds startle and distress Mr. Creech when they did not before.

120. For example, the sound of a guard brushing Mr. Creech's door triggers memories of his aunt and uncle molesting him when he was a child.

121. Seventh, Mr. Creech has become more isolated and withdrawn since the botched execution.

122. Before being returned to F-Block on October 16, 2024, he avoided other people, any one of whom he feared might be the one to return him to the death house.

123. Mr. Creech was drawn to the window overlooking F-Block, which he watched constantly.

124. While there, he would stare at the death house and dissociated.

125. The world now feels unreal to Mr. Creech and he often believes he actually died at his execution.

126. The failed execution has traumatized Mr. Creech.

*Legal Basis for Relief*:

127. It is cruel and unusual for the government to subject a prisoner to "the unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).[3]

128. It would constitute the unnecessary and wanton infliction of pain on Mr. Creech to attempt to execute him by any method after subjecting him to the psychological torment of the botched execution on February 28, 2024, and the events leading up to it.

129. "Punishments are [also] cruel when they involve torture or a lingering death." *In re Kemmler*, 136 U.S. 436, 447 (1890).

---

[3] In this petition, all internal quotation marks and citations are omitted, and all alterations are in original unless otherwise noted.

130. Attempting to execute Mr. Creech by any method, after the botched execution attempt, would represent torture and a lingering death.

131. To seek to execute Mr. Creech after the ordeal IDOC put him through in February 2024 would also be to "superadd . . . terror, pain, [and] disgrace" to the execution, which is unconstitutional. *Bucklew v. Precythe*, 587 U.S. 119, 133 (2019).

132. It is cruel and unusual to force a man to spend twenty-nine days preparing for his involuntary death, unsuccessfully attempt to kill him in front of a crowd of people, and then try to do the whole thing over again.

133. Thus, it would be cruel and unusual to subject Mr. Creech to another execution attempt.

134. A subsequent execution attempt is made even crueler by the fact that the State of Idaho has previously obtained ten death warrants for Mr. Creech that it knew or should have known would never be carried out, thereby unnecessarily subjecting him to the torture of being told numerous times the date on which he would supposedly be put to his involuntary death.

135. Additionally, a subsequent execution attempt would be "unusual" in the sense of the Eighth Amendment in part because of how uncommon it is for a state to attempt to put a prisoner to death after trying and failing to do so previously.

136. If the State of Idaho attempted to execute Mr. Creech again, it would be subjecting him to a punishment – another execution attempt following a botched execution – which more than 99.9% of relevant inmates have been spared.

Petition for Habeas Corpus – 15

137. In the modern death-penalty era (from 1976 to today), there have been 1,601 executions.

138. Only six of those inmates have survived the attempt.

139. Of those six, states attempted again to put just two to death.

140. Both of those executions occurred in Alabama.

141. Thus, the ordeal Idaho intends to inflict upon Mr. Creech is one that 0.1% of the comparable inmates have faced.

142. That is an unusual punishment within the meaning of the Eighth Amendment.

143. Because attempting again to execute Mr. Creech by any method would constitute cruel and unusual punishment, his death sentence is unconstitutional.

*Exhaustion of Claim*:

144. The claim alleged here was presented to the Ada County District Court in his March 18, 2024, post-conviction petition (case number CV01-24-04845).

145. On October 16, 2024, that court denied Mr. Creech's Motion to Reconsider its denial of the post-conviction petition.

146. The Idaho Supreme Court has not yet been presented with or heard this claim.

147. Mr. Creech's execution is scheduled for November 13, 2024.

### B. Claim Two: It would violate double jeopardy principles to carry out Mr. Creech's death sentence after the botched execution.

148. It would violate double jeopardy principles to carry out Mr. Creech's death sentence after the botched execution. *See* U.S. Const., Ams. V, XIV.

*Supporting Facts*:

149. As set forth above, the State of Idaho began the process of executing Mr. Creech on February 28, 2024, and attempted but failed to put him to death.

150. The State therefore put Mr. Creech "in jeopardy of life or limb" for the murder of Mr. Jensen.

*Legal Basis for Relief*:

151. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides as follows: "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."

152. The Double Jeopardy Clause prohibits "multiple punishments for the same offense" and bars the government from "attempting a second time to punish criminally . . . for the same offense." *United States v. Halper*, 490 U.S. 435, 441, 442 (1989), *abrogated on other grounds by Hudson v. United States*, 522 U.S. 93, 101–03 (1997).

153. As a consequence, another execution attempt using any method would constitute "multiple punishments for the same offense." *Id.* at 441.

154. It would therefore violate double jeopardy principles for the State to again attempt to execute Mr. Creech, by any method, for the same offense.

155. Because a subsequent execution attempt would violate double jeopardy, Mr. Creech's death sentence is unconstitutional.

*Exhaustion of Claim*:

156. The claim alleged here was presented to the Ada County District Court in his March 18, 2024, post-conviction petition (case number CV01-24-04845).

157. On October 16, 2024, that court denied Mr. Creech's Motion to Reconsider its denial of the post-conviction petition.

158. The Idaho Supreme Court has not yet been presented with or heard this claim.

159. Mr. Creech's execution is scheduled for November 13, 2024.

### III. Relief Sought

160. Based on the foregoing, Mr. Creech respectfully prays that the Court grant the writ of habeas corpus with respect to his death sentence.

Respectfully submitted this 17th day of October, 2024.

        */s/ Mary E. Spears*
        Mary E. Spears

### IV. Verification

I, Mary E. Spears, authorized by Thomas Eugene Creech, Petitioner in this case, declare under penalty of perjury that the foregoing is true and correct to the best of my understanding, knowledge, and ability.

        */s/ Mary E. Spears*
        Mary E. Spears

# CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of October, 2024, I served the foregoing document on all interested parties by emailing it to:

L. LaMont Anderson
Lamont.Anderson@ag.idaho.gov

>*/s/ Heidi Thomas*
> Heidi Thomas