1    **WO**

2

3

4

5

6             **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    THOMAS EUGENE CREECH,                    No. 1:24-cv-00485-GMS

10                     Petitioner,            **ORDER**

11   v.                                       <u>DEATH PENALTY CASE</u>

12   RANDY VALLEY,

13                     Respondents.

14

15

16          Before the Court is Petitioner Thomas Creech's Motion to Alter or Amend

17   Judgment under Rule 59(e) of the Federal Rules of Civil Procedure.  (Doc. 51-1.)  The

18   Court denied Mr. Creech's habeas petition, which alleged that the State's intent to execute

19   him after a failed first execution attempt constituted cruel and unusual punishment in

20   violation of the Eighth Amendment.[1]  (Doc. 47.)

21          Mr. Creech asserts that the Court "committed manifest errors of law" in denying his

22   petition. (Doc. 51-1 at 2.)  He asks the Court to grant habeas relief, hold an evidentiary

23   hearing or, alternatively, to "withdraw from [the order] whichever flawed portions it sees

24   fit so as to narrow the issues in the forthcoming appeal." (Doc. 51-1 at 1.)   Respondent

25   opposes the motion.  (Doc. 56.)  The matter is fully briefed.  (*See* Doc. 59.) The motion is

26   _____

27   [1] The facts of Mr. Creech's crimes and the procedural history of this case are set forth in
     previous orders, including the order denying habeas relief. (Doc. 47 at 2–4); *see, e.g.*,
28   *Creech v. Richardson*, 59 F.4th 372, 376–82 (9th Cir. 2023); *Arave v. Creech*, 507 U.S.
     463, 466, (1993).

1  denied for the reasons set forth below.

2  **A.    Applicable Law**

3  Rule 59(e) allows a litigant, including a habeas petitioner, to file a "motion to alter

4  or amend a judgment." *Banister v. Davis*, 590 U.S. 504, 507 (2020).  Rule 59(e) offers an

5  "extraordinary remedy, to be used sparingly in the interests of finality and conservation of

6  judicial resources." *Kona Enter., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000);

7  *see also Rishor v. Ferguson*, 822 F.3d 482, 491–92 (9th Cir. 2016); *Peterson v. Gunderson*,

8  No. 2:23-CV-00544-DCN, 2025 WL 1684789, at *1 (D. Idaho June 16, 2025).  The Ninth

9  Circuit has consistently held that a motion brought pursuant to Rule 59(e) should only be

10  granted in "highly unusual circumstances."  *Kona Enterprises*, 229 F.3d at 890; *see also*

11  *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *Peterson*, 2025

12  WL 1684789, at *1.

13  Relief under Rule 59(e) is appropriate only if the court is presented with newly

14  discovered evidence, if there is an intervening change in controlling law, or if the court

15  committed clear error.  *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014); *McDowell v.*

16  *Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam); *see School Dist. No. 1J,*

17  *Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A motion for

18  reconsideration is not a forum for the moving party to make new arguments not raised in

19  its original briefs, *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26

20  (9th Cir. 1988); *see also Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)

21  (holding district court did not abuse its discretion by disregarding legal arguments and facts

22  previously available but raised for the first time under Rule 59(e)), nor is it the time to ask

23  the court to "rethink what the court ha[s] already thought through," *United States v.*

24  *Rezzonico*, 32 F.Supp.2d 1112, 1116 (D. Ariz. 1998).  The fact that a petitioner disagrees

25  with the court's conclusion is an insufficient basis to seek reconsideration under Rule 59(e).

26  *United States v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001) ("A

27  party seeking reconsideration must show more than a disagreement with the Court's

28  decision, and recapitulation of the cases and arguments considered by the court before

1    rendering its original decision fails to carry the moving party's burden.") (quotations

2    omitted).

3    **B.**     **Analysis**

4       In seeking reconsideration of the order denying his habeas petition, Mr. Creech

5    asserts that the Court "committed manifest errors of law in its treatment of both 28 U.S.C.

6    § 2254(d)(1) and 28 U.S.C. § 2254(d)(2)." (Doc. 51-1 at 2.) The motion fails because it

7    is based on nothing more than a disagreement with the Court's decision and because Mr.

8    Creech's challenges to the Court's decision are meritless.

9       **1.**      **§ 2254(d)(1)**

10      In denying Mr. Creech's Eighth Amendment claim, the Court identified *Francis v.*

11   *Resweber*, 329 U.S. 459 (1947), along with *Baze v. Rees*, 553 U.S. 35 (2008), and its

12   progeny, as the applicable "clearly established Federal Law" under 28 U.S.C. § 2254(d).

13   (*See* Doc. 47 at 5.) The Court concluded that the Idaho Supreme Court's denial of the

14   claim, *Creech v. State*, 558 P.3d 723 (Idaho 2024), was neither contrary to nor an

15   unreasonable application of that law. The Court further found that even under de novo

16   review, Mr. Creech would not be entitled to habeas relief. (Doc. 47 at 18.)

17      Mr. Creech's principal argument is that this Court manifestly erred in its application

18   of § 2254(d)(1) by "utilizing an inapposite method-of-execution framework rather than the

19   well-settled deliberate indifference doctrine." (Doc. 51-1 at 2.) According to Mr. Creech,

20   the method-of-execution line of cases, which encompasses *Baze v. Rees*, 553 U.S. 35

21   (2008), *Glossip v. Gross*, 576 U.S. 863 (2015), and *Bucklew v. Precythe*, 587 U.S. 119

22   (2019), is inapposite because it addresses only the physical pain suffered by an inmate

23   during the execution, whereas Mr. Creech's "Eighth Amendment challenge is geared

24   toward the psychological anguish that would begin, as a result of the failed execution

25   attempt, with the issuance of another death warrant." (Doc. 51-1 at 4; *see* Doc. 59 at 1–2.)

26   This argument is unpersuasive.

27      As an initial matter, Mr. Creech, in arguing that the Court erred by looking to

28   *Resweber* and the more recent method-of execution cases rather than applying the

1    deliberate indifference standard to his claim, is simply repeating the argument he made in

2    in previous filings.  (*See* Doc. 17 at 20–24; Doc. 21 at 10–15, 24, 37, 43; Doc. 33 at 16–

3    25; Doc. 39 at 3.)  While this alone is sufficient to deny the pending motion, *see, e.g.*,

4    *Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131, the Court will address Mr. Creech's

5    arguments.

6         First, although Mr. Creech now argues that the method-of-execution cases do not

7    govern his claim, he cited *Bucklew* in his petition for the proposition that seeking to execute

8    him after the failed first execution attempt would "'superadd . . . terror, pain, [and]

9    disgrace' to the execution, which is unconstitutional."  (Doc. 1 at 15, ¶ 131) (quoting

10   *Bucklew*, 587 U.S. at 133).  The Court did not commit manifest error by applying the law

11   relied upon by Mr. Creech himself.

12        While Mr. Creech was correct in citing *Bucklew* as providing the framework for an

13   as-applied challenge to his execution, the case does not support relief on the claim.  In

14   *Bucklew* the Court addressed the petitioner's as-applied Eighth Amendment challenge to

15   his execution by lethal injection.  The petitioner asserted that due to his unique medical

16   condition—a disease causing vascular tumors—lethal injection would result in severe pain.

17   587 U.S. at 126.  He argued that an as-applied challenge should not be subject to the

18   requirement that an inmate raising an Eighth Amendment challenge to a method of

19   execution must identify a "feasible, readily implemented" alternative procedure that would

20   "significantly reduce a substantial risk of severe pain." *Id.* at 134–35 (citing *Glossip*, 576

21   U.S. at 879).  The Court rejected this argument, reiterating that "[t]o determine whether the

22   State is cruelly superadding pain, our precedents and history require asking whether the

23   State had some other feasible and readily available method to carry out its lawful sentence

24   that would have significantly reduced a substantial risk of pain."  *Id.* at 138.  This

25   requirement applies "to *all* Eighth Amendment method-of-execution claims."  *Id.* at 136

26   (quoting *Glossip*, 576 U.S. at 867) (emphasis added in *Bucklew*).  Mr. Creech insists he is

27   "not challenging a method of execution in the sense that the inmates [in *Baze* and *Glossip*]

28   were."  (Doc. 33 at 25.)  Nevertheless, he is raising an as-applied challenge based on an

1    argument which is difficult to distinguish from the claim in *Bucklew*.    Each petitioner

2    alleges he suffers from a unique condition—mental in Creech's case, physical in

3    Bucklew's—that would render his execution cruelly painful.  Neither provided a feasible

4    alternative method that would significantly reduce the risk of pain posed by the execution.

5            Second, Mr. Creech offers no support for the proposition that psychological pain

6    and physical pain require different, independent analyses under the Eighth Amendment.

7    The cases do not support such a distinction.  In fact, *Resweber* itself directly addressed the

8    "psychological strain" and "mental anguish" suffered by a prisoner forced to prepare a

9    second time for his death by electrocution, finding that it did not "subject[] him to a

10   lingering or a cruel and unusual punishment."  329 U.S. at 464; *cf. Bucklew*, 587 U.S. at

11   130 (explaining that the Founders understood "cruel" to include punishments "[d]isposed

12   to give pain to others, in body *or mind*") (emphasis added).  As the Court has already stated,

13   the Eighth Amendment does not guarantee Mr. Creech a death free from all pain, including

14   psychological pain.  *See, e.g., Boyd v. Hamm*, No. 2:25-CV-529-ECM, 2025 WL 2884410

15   (M.D. Ala. Oct. 9, 2025) (denying preliminary injunction on death row inmate's claim that

16   execution by hypoxia would cause psychological pain in violation of the Eighth

17   Amendment) (citing *Bucklew*, 587 U.S. at 132, 136–37); *In re Ohio Execution Protocol*

18   *Litig.*, No. 2:11-CV-1016, 2017 WL 5020138, at *9 (S.D. Ohio Nov. 3, 2017), *aff'd*, 881

19   F.3d 447 (6th Cir. 2018) ("Psychological pain or mental suffering is a likely result of being

20   sentenced to death and anticipating the execution, but that experience of psychological

21   suffering could not by itself make a method of execution unconstitutional.  Presumably all

22   death row inmates suffer that pain, but the death penalty is not per se unconstitutional.").

23           Third, the argument that the deliberate indifference standard constitutes the clearly

24   established federal law governing this claim is incorrect.  The deliberate indifference

25   standard was first articulated by the Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 106

26   (1976), a civil rights case under 42 U.S.C. § 1983 involving medical treatment for inmates.

27   After reviewing its Eighth Amendment cases, the Court reiterated that it had "held

28   repugnant to the Eighth Amendment punishments which are incompatible with 'the

1  evolving standards of decency that mark the progress of a maturing society' . . . or which

2  'involve the unnecessary and wanton infliction of pain.'"  *Id.* at 101–02 (quoting *Trop v.*

3  *Dulles*, 356 U.S. 86, 101 (1958); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The Court

4  then determined that "deliberate indifference to serious medical needs of prisoners

5  constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth

6  Amendment."  *Id.* at 104 (quoting *Gregg*, 428 U.S. at 173).  In support of that holding the

7  Court cited *Resweber,* explaining that "[a]n accident, although it may produce added

8  anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary

9  pain."  *Estelle*, 429 U.S. at 105 (citing *Resweber*, 329 U.S. at 464).

10       Mr. Creech's deliberate indifference allegations are "based on mistreatment by

11  prison staff over many months in violation of the Eighth Amendment."  (Doc. 33 at 20.)

12  The only mistreatment he identifies, however, is the State obtaining a death warrant and

13  prison staff taking steps, such as a vein mapping examination, to prepare for Creech's

14  execution; he also cites the steps he is forced to take or retake in preparation of his

15  execution, such as arranging for the disposal of his property and saying goodbye to his

16  wife.  (*See* Doc. 21 at 41-42.)  Mr. Creech cites no authority holding that such activities

17  have ever been subject to the deliberate indifference standard.

18       Moreover, pre-execution actions, and the psychological stress they cause, are not

19  unique to a second execution attempt.  As the court noted in *Boyd*:

20      Every person condemned to die likely experiences feelings of angst, anxiety,

21      stress, or panic.  For hundreds of years, condemned inmates—regardless of
    the execution method—have been placed in the unenviable position of

22      confronting their final moments.  On death row, a condemned inmate

23      arguably endures psychological pain from the date his sentence is imposed
    until the moment of his execution. . . . Every method of execution also

24      inevitably includes several steps signaling that death is imminent.  The

25      condemned inmate eats a last meal, says goodbye to loved ones, is escorted
    to the execution chamber, and utters his final words. . . .  The condemned

26      inmate's psychological and emotional pain likely increase as each step is

27      complete—an unfortunate "but inescapable consequence of death."  *Baze*,
    553 U.S. at 50.

28

1
2
3
4

> Psychological and emotional pain are thus unavoidable consequences of capital punishment under any method of execution. . . . Walking to the gallows, feeling the electric chair's straps tighten, having a target affixed to one's chest, or being secured to a gurney each evokes strong feelings that death is imminent and results in corresponding psychological and emotional pain.

5
6

*Boyd*, 2025 WL 2884410, at \*20–21; *see In re Ohio Execution Protocol Litig.*, 2017 WL 5020138, at \*9.

7
8
9
10
11
12
13
14

Mr. Creech insists that the Court made a "methodological mistake" by not employing the deliberate indifference standard to his Eighth Amendment claim. (Doc. 51-1 at 12.) The methodological error, however, would be applying the deliberate indifference standard in the context of an execution, where it has never previously been applied. Mr. Creech cites *Porter v. Clarke*, 923 F.3d 348 (4th Cir. 2019), in support of his argument that "[t]here is no reason to avoid such a fundamental rule [the deliberate indifference standard] just because a death row inmate is the petitioner." (Doc. 51-1.) This argument misses the mark.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Porter*, Virginia death row inmates brought a civil rights action under § 1983 challenging the conditions in which they were housed, which was tantamount to prolonged solitary confinement. The Fourth Circuit upheld the district court's grant of summary judgment on the inmates' behalf, finding that the undisputed evidence established both that the challenged conditions of confinement created "a substantial risk of serious psychological and emotional harm and that State Defendants were deliberately indifferent to that risk." *Porter*, 923 F.3d at 364 (4th Cir. 2019). Nothing in *Porter* supports extending the deliberate indifference standard to the processes involved in the State's preparation for and implementation of an execution. "The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer v. Brennan*, 511 U.S. 825, 843 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Under this standard, every execution—the deliberate taking of a prisoner's life—would satisfy the deliberate indifference standard and violate the Eighth Amendment; and yet "capital

1    punishment is constitutional," with the corollary that "there must be a means of carrying it

2    out." *Baze*, 553 U.S. at 47.

3        Finally, Mr. Creech makes much of the recent Supreme Court decision *Andrew v.*

4    *White*, 604 U.S. 86 (2025). *Andrew,* however, merely illustrates the flaw in Mr. Creech's

5    arguments.

6        In *Andrews*, the Court explained that "[g]eneral legal principles can constitute

7    clearly established law for purposes of AEDPA so long as they are holdings of this Court."

8    *Id.* at 94. According to Mr. Creech, the deliberate indifference standard is just such a

9    general legal principle, governing cases where "a state prisoner alleges that prison officials

10   have exposed him to mental distress by treating him in a cruel and unusual manner over an

11   extended period of time," and therefore applies to his case despite not previously having

12   been used in the context of the steps taken in the run-up to an execution. (Doc. 51-1 at 10.)

13       In *Andrews*, the district court denied habeas relief on the petitioner's claim that her

14   due process rights were violated by the introduction of unfairly prejudicial character

15   evidence. The Court of Appeals for the Tenth Circuit affirmed, finding that "no relevant

16   clearly established law existed" for purposes of § 2254(d)(1). *Andrews*, 604 U.S. at 95.

17   The court found that the case cited by the petitioner, *Payne v. Tennessee*, 501 U.S. 808

18   (1991), was limited to the issue of victim impact evidence and that there was no Supreme

19   Court precedent addressing the precise issue in the petitioner's case. *Andrews*, 604 U.S. at

20   91. The Supreme Court reversed, explaining that legal principles such as due process

21   constitute clearly established federal law and are "fundamental enough" to apply when

22   "new factual permutations arise." *Id.* at 95 (citation omitted).

23       *Andrew* does not benefit Mr. Creech because his case does not involve a "new

24   factual permutation" into which a general principle such as the deliberate indifference

25   standard must be imported. To the contrary, in *Resweber* the Court addressed the identical

26   factual and legal scenario—the allegation that a second execution attempt, following a

27   failed first attempt, amounted to a "lingering or cruel and unusual punishment." 329 U.S.

28   at 464. The Court rejected the argument and concluded that a second execution attempt,

1    despite the psychological strain experienced by the prisoner, was not "any more cruel in

2    the constitutional sense than any other execution." *Id.*

3        There is simply no question that *Resweber* is the clearly established federal law

4    governing Mr. Creech's claim. *See Broom v. Jenkins*, No. 1:10 CV 2058, 2019 WL

5    1299846, at *30 (N.D. Ohio Mar. 21, 2019), *aff'd sub nom.*, *Broom v. Shoop*, 963 F.3d 500

6    (6th Cir. 2020*); Smith v. State*, 923 F.3d 348, 405 (Ala. Crim. App. 2023), *cert. denied*,

7    144 S. Ct. 715 (2024). *Resweber*'s continuing viability is demonstrated by the Supreme

8    Court's reliance on the decision in its method-of-execution cases, which post-date the

9    Court's formulation of the deliberate indifference standard. *See id.* at *23.

10        The Idaho Supreme Court's denial of Mr. Creech's Eighth Amendment was neither

11    contrary to nor an unreasonable application of clearly established federal law. Mr. Creech

12    is not entitled to reconsideration of the Court's order on the grounds of 28 U.S.C. §

13    2254(d)(1).

14        **2.    § 2254(d)(2)**

15        Mr. Creech again argues that this Court committed manifest error in its analysis of

16    the Idaho Supreme Court's decision. (Doc. 51-1 at 13.) He particularly takes issue with

17    this Court's conclusion that the state court decision represented a reasonable interpretation

18    of the law. (*Id.*) Instead, Mr. Creech contends, the decision was based on unsupported

19    factual determinations about (1) the suffering he experienced during the failed first

20    execution attempt and continues to experience as he awaits the second, and (2) the state of

21    mind of those responsible for carrying out his execution. (*Id.* at 13–17.) Mr. Creech's

22    arguments, however, are the same ones he offered in his supplemental brief (*see* Doc. 21

23    at 25–29)—arguments which the Court considered and rejected.

24        The arguments fail for the reasons already discussed. As this Court noted, with

25    respect to the first factor the Idaho Supreme Court "accept[ed] all of Mr. Creech's

26    allegations of suffering as true, including his assertion that his present suffering is

27    exacerbated by the fact that it is his second time around." (Doc. 47 at 23) (citing *Creech*,

28

1  558 P.3d at 731) ("accept[ing] as true Creech's allegations that he experienced the pain and

2  ongoing psychological distress that he described".))

3      Concerning the second factor, the Court explained that, notwithstanding statements

4  by the Idaho Supreme Court (whether those statements are characterized as dicta or part of

5  its holding), the subjective motivations of the state actors are not relevant to Mr. Creech's

6  Eighth Amendment claim, which depends, under *Resweber* and *Baze*, on a showing that

7  the upcoming execution involves an objectively intolerable risk of pain.  (Doc. 47 at 25.)

8  Because the state of mind of those responsible for executing Mr. Creech is not a "material

9  factual issue," the state court's decision was not "based on" an unreasonable factual

10  determination and Mr. Creech is not entitled to relief under 28 U.S.C. § 2254(d)(2).  *Taylor*

11  *v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004), *abrogated on other grounds as stated in*

12  *Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014); *see also Juan H. v. Allen*, 408

13  F.3d 1262, 1270 n.8 (9th Cir. 2005) ("[U]nder § 2254(d)(2), a federal court may . . . grant

14  a writ of habeas corpus if a *material* factual finding of the state court reflects 'an

15  unreasonable determination of the facts in light of the evidence presented in the State court

16  proceeding.'") (emphasis added).

17      Finally, as the Court also noted in its order denying habeas relief, the absence of

18  disputed material facts means that an evidentiary hearing was necessary neither in state

19  court nor before this Court.  *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Hibbler*

20  *v. Benedetti*, 693 F.3d 1140, 1146–47 (9th Cir. 2012).

21  **C.    Conclusion**

22      For the reasons set forth above, Mr. Creech has failed to establish the "highly

23  unusual circumstances" that would necessitate granting a motion under Rule 59(e) based

24  on a manifest error by the Court.  *See Wood*, 759 F.3d at 1121.  He simply disagrees with

25  the Court's decision, *Westlands Water Dist.*, 134 F.Supp.2d at 1131, and asks the Court to

26  rethink what it has already thought through, *Rezzonico*, 32 F.Supp.2d at 1116.  The motion

27  is therefore denied.

28      Accordingly,

1

**IT IS HEREBY ORDERED** Mr. Creech's motion to alter or amend the judgment

2

pursuant to Rule 59(e) (Doc. 51) is **DENIED**.

3

Dated this 12th day of November, 2025.

4

5

_____

G. Murray Snow

6

Senior United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28